𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## BAUGH & SONS CO. V. BLACK AND OTHERS.

### November 16, 1916.

1. EVIDENCE—*Joint Bond—Principal and Surety—Case in Judgment.*—Where father and son execute their joint bonds to a creditor and secure the same by a joint deed of trust on their separate real estate, and the deed provides that the trustee shall sell first the lands conveyed by the father "and if a sufficient amount is derived to pay the debt and costs, will not make further sale," while this clause of the deed is a circumstance tending to show that the father was the principal debtor, it may be shown from other parts of the deed and by extrinsic evidence that as between themselves, each was a principal as to one-half the debt and a surety as to the other half, and such was shown to be the fact in the case in judgment.

2. SUBROGATION—*Principal and Surety—Payment by Surety—Funds of Principal in Hands of Court—Case in Judgment.*—As a general rule, before a surety is entitled to be subrogated to the rights of the creditor against the principal debtor, he must have actually paid or satisfied the debt, but, where the rights of the parties are clear, a court of equity, in carrying out the principles underlying and constituting the doctrine of subrogation, will take the shortest road to the right and justice of the case. The doctrine of subrogation has nothing of form or technicality about it. It is the creature of equity, and essential justice is its object. In the case in judgment, the principal's lands have been sold and the proceeds are under the control of the court, and the court will not do the vain thing of selling the lands of the surety and then granting him subrogation.

3. ESTOPPEL—*Case in Judgment—Statement in Deed—Misrepresentation.*—J. and L., who were father and son, made their joint bonds to a creditor, and secured the same by a joint deed of trust on their separate real estate, which deed provided that the trustee "sell first the lands conveyed by J. and, if a sufficient amount is derived to pay the debt and costs, will not make further sale." Subsequently, L. conveyed his land in trust to secure other creditors, some of whose debts were con-

tracted after the recordation of the first deed and upon the faith of the above quoted statement therein contained, but who made no inquiry of J. as to the relation of himself and L. concerning the joint debt above mentioned. The creditors in the deed made by L. only claimed that J. was estopped by the deed first mentioned from setting up the claim that he was primarily bound for only one-half of the debt secured by the joint deed.

*Held:* There was no estoppel. The mere fact that one clause of the deed tended to show that J. was the principal as to the whole debt, when other clauses and extrinsic evidence showed that he was principal as to only one-half the debt, did not give the creditors in the deed made by L. only on his land any higher rights than they would have had if the deed had been silent on the subject, that the creditors of L. could stand on no higher ground than their debtor, and that as to creditors who claimed to have extended credit on the faith of the statements in the first deed there could be no estoppel, as no inquiry was made of J. nor any misrepresentation made by him.

Appeal from a decree of the Circuit Court of Augusta county. From an adverse decree some of the creditors appeal.

*Affirmed.*

The opinion states the case.

*Quarles & Pilson, A. C. Gordon, Gardner L. Boothe* and *William A. Pratt,* for the appellants.

*Joseph A. Glasgow,* for the appellees.

KELLY, J., delivered the opinion of the court.

This suit was brought by trustees hereinafter named to obtain the decision and direction of the court upon the relative rights of sundry parties claiming liens upon certain real estate held by them.

On the first day of July, 1908, J. T. Black, J. Lacy Black and Patsy C. Black, his wife, executed a deed of trust to

secure Andrew Bowling in the sum of $20,000. This sum was evidenced by five bonds made and signed in the common form of joint obligations by J. T. Black and J. Lacy Black. The deed of trust embraced about 300 acres belonging to J. T. Black and about 127 acres belonging to J. Lacy Black and wife, and contained the following provisions material to the present controversy:

"In distributing the purchase money the trustee shall pay: (1) The cost of executing this trust. (2) Any unpaid taxes on the lands. (3) The amount of said debt; and the residue of the purchase money he will pay over to the said parties of the first and second parts as their interest in the said lands and the price derived for the same may entitle them.

"In enforcing said deed, said trustee will sell first the lands conveyed by said J. T. Black, and if a sufficient amount is derived to pay the debt and costs, will not make further sale under this deed."

In May, 1909, J. T. Black sold 157 acres of his land embraced in the deed of trust, and realized thereon $11,790, out of which he paid, before maturity, one-half of the Bowling debt, applying the residue of the purchase money to his own use. This was done by and with the consent of Andrew Bowling and J. Lacy Black.

On the 20th of August, 1912, J. Lacy Black and wife executed a second deed of trust on their 127 acres above mentioned, to secure Andrew Bowling in the further sum of $7,000; and on December 17, 1914, they executed still another deed of trust on the 127 acres and on certain other real estate and personal property, to secure, first, the debts theretofore secured by prior deeds of trust, "in the order of their legal priority," and, second, the general creditors of the grantors, among whom were the appellants here.

This suit, for advice and direction, was brought by Pratt and Kerr, trustees under the last-named trust deed. The controversy in the case arises between the general credi-

tors of J. Lacy Black and wife, on the one hand, and J. T. Black, on the other—the former claiming that the balance of J. T. Black's 300 acres included in the first deed of trust must be subjected to the satisfaction of the unpaid portion of the original Bowling debt before that debt can reach the lands of J. L. Black and wife, and J. T. Black claiming that he was primarily liable, at the most, for only one-half of the original Bowling debt, and, having paid that, his lands cannot be further subjected unless the lands of J. L. Black and wife prove insufficient to pay the other half. His original and further-reaching contention (not inconsistent, however, under the allegations in his answer and under the evidence, with his present position) that he was liable only as surety and not to any extent as principal, is not insisted upon in this court.

The cause was referred to a commissioner for a report on the properties involved and the liens thereon in the order of their priority. Pending this reference, the trustees under the last named deed of trust sold the 127 acres of land owned by J. L. Black and wife at a private sale for $20,000. This was done by consent of all parties interested, and with the approval of the court, and the proceeds were brought into the cause "to stand exactly in the same position as the lands," and subject to exactly the same liens and equities.

It was, of course, conceded that the second Bowling deed of trust for $7,000 would, in any event, have to be satisfied from the proceeds of the 127 acres before the general creditors of J. L. Black and wife would have any valid claim thereon, and accordingly that deed of trust was paid off and discharged by the trustees pursuant to a consent decree in the cause.

The report filed by the commissioner seems to proceed upon the theory that as between J. T. and J. L. Black the former was only bound for one-half of the original Bowl-

ing debt, and that if J. T. Black's lands should be subjected for more than one-half thereof, he would be entitled to be subrogated to the rights of Bowling against J. L. Black; but the commissioner was of opinion, and so reported, that this original status of J. T. and J. L. Black would have to yield to the rights of creditors holding debts subsequently acquired against J. L. Black and wife. The report, in this respect, concludes as follows: "But assuming that the Bowling lien will be paid by the J. T. Black land, certainly until creditors of J. L. Black and wife, other than J. T. Black, under the Gordon (second) deed of trust and those secured under the Pratt and Kerr (third) deed, are all paid, J. T. Black will not have the right of subrogation against their land, and cannot come into competition with those creditors, or share in the distribution of assets realized by Pratt and Kerr, trustees." In arriving at this conclusion, the commissioner was controlled by the clause in the first deed of trust directing that the J. T. Black land should be first sold, and, in case the same brought enough to pay the debt and costs, none of the other lands embraced therein should be sold, and by the fact that two of the general creditors introduced proof that they had examined the records and had been induced to extend credit to J. L. Black and wife by reason of that clause in the deed.

To this report J. T. Black excepted. The court sustained the exception, and its action in doing so is the subject of this appeal.

The essential portion of the very comprehensive decree entered by the court was as follows:

"Upon consideration whereof, the court doth sustain the exceptions of J. T. Black to the report of Master Commissioner Nelson as hereinafter set out; the court is of the opinion that the balance due upon the bonds dated July 1, 1908, executed by J. T. Black and J. Lacy Black to Andrew Bowling and secured by deed of trust dated July 1, 1908,

to Wm. Patrick ,trustee,. upon the lands of J. T. Black, J. Lacy Black and Patsy Black should be paid at once and Andrew Bowling is entitled to receive payment of said balance at once irrespective of the rights of J. T. Black, J. Lacy Black and Patsy Black, among themselves. And it appearing to the court that the lands of J. Lacy Black and Patsy Black have been sold by agreement of parties to this cause by Wm. Pratt and H. H. Kerr, trustees, in this cause, and that the fund derived from the sale of said lands is in the hands of the said Wm. A. Pratt and H. H. Kerr, trustees, and is ample to pay the balance due on the said Bowling debt, it is therefore adjudged, ordered and decreed that the said Wm. A. Pratt and H. H. Kerr, trustees, do forthwith pay out of the funds in their hands derived from the sale of the lands of J. Lacy Black and Patsy Black the balance due to Andrew Bowling upon the debt secured under the deed of trust dated July 1, 1908, and the court, proceeding to consider and determine the rights of J. T. Black, J. Lacy Black and Patsy Black as between themselves, is of the opinion that J. T. Black and J. Lacy Black are joint obligors in the debt of $20,000.00 evidenced by the bonds dated July 1, 1908, executed by J. T. Black and J. Lacy Black, payable to Andrew Bowling and secured by a deed of trust of even date with said bonds, executed by J. T. Black and J. Lacy Black and Patsy Black to Wm. Patrick, trustee, and that J. T. Black as principal owes one-half of said debt and is surety for the other half of said debt and that Patsy Black, the wife of J. Lacy Black, is surety for her husband, J. Lacy Black. And it appearing from the evidence that J. T. Black has paid and discharged one-half of said debt, the sum of $10,000.00, the amount for which he is liable as principal, the balance of said debt remaining unpaid, that is, one-half, is the debt of J. Lacy Black as principal and Patsy Black, as sureties, and it is accordingly so adjudged, ordered and decreed.

3

"And it appearing to the court that by agreement of par-
ties to this cause the land of J. Lacy Black and the land
of Patsy Black bound by the deed of trust above mentioned,
have been sold together for the sum of $20,000.00, it is
adjudged, ordered and decreed that the part of this $20,-
000.00 derived from the land of J. Lacy Black is as be-
tween the parties first applicable to the payment of the
balance due to Andrew Bowling and any balance left unpaid
is payable equally by J. T. Black and Patsy Black, and the
land of J. T. Black passing under said deed of trust is
bound for the amount so owed by him, and the deed of trust
executed by him to the said Patrick, trustee, is hereby kept
alive and in full force for that purpose.

"And it is further adjudged, ordered and decreed, that
this cause be and the same is recommitted to Master Com-
missioner Nelson, who shall make and state an account
showing what is a fair division of the purchase price of
$20,000.00 paid for the land of J. Lacy Black and the land of
Patsy Black as between said J. Lacy Black and said Patsv
Black."

In the view entertained by us, the question which is de-
cisive of the controversy in hand is whether J. T. Black
was, as he appears upon the face of the Bowling bonds to
be, a joint maker with J. L. Black, or was, as would seem
probable from the last clause in the deed of trust if that
clause stood alone, the principal debtor upon the entire
Bowling debt of $20,000 with J. L. Black as his surety.
The circuit court held that J. T. and J. L. Black were joint
makers of the bonds, each of them being bound as principal
for one-half and as surety for the other half thereof. In
this holding there was, in our opinion, no error.

The loan of $20,000 from Bowling was obtained to meet
pressing obligations owing to sundry banks by the firm of
H. A. Black and Brother. This firm was composed of H.
A. and J. L. Black, both sons of J. T. Black. The latter

was not a member of that firm, but had been a very heavy accommodation endorser for it, and was in that way liable upon its indebtedness. The entire $20,000 secured from Bowling was turned over to J. Lacy Black, and, except as to a negligible sum, was applied by him to the firm debts. Some of these debts were incurred by H. A. Black before J. Lacy Black became his partner, but the debts were thereafter assumed as liabilities of the firm. It appears, however, that upon about $3,000 of these liabilities J. T. Black was from the outset bound as principal.

In the course of his written opinion in this case, the learned judge of the circuit court made the following statements, which are, in all substantial respects, fully supported by the record and which we may well adopt in this connection:

"The money ($20,000 from Bowling) was paid directly to Lacy. Not a dollar of it went into the hands of the father. It was used to pay an indebtedness, $3,000 of which was primarily the father's; $17,000, the residue thereof, to pay debts, a part of which was the primary indebtedness of H. A. Black and a part the primary indebtedness of H. A. Black & Brother. All of this indebtedness, however, by renewals, etc., had become the indebtedness of H. A. Black & Brother. These facts, standing alone, lead us to the conclusion that the Bowling loan was negotiated primarily to benefit Black & Brother, and not J. T. Black. Certainly this would seem to be so to the extent of $17,000."

Further on in the opinion it is said: "It would not be just to treat J. T. Black as an accommodation endorser for the entire amount; $3,000 of this money went to pay a debt for which the father was primarily liable. In 1909, one year after this money was borrowed, J. T. Black sold to outsiders about 150 acres of his land for $11,790. $10,000, part thereof, he paid to Bowling. A part of this he paid on bonds not yet due. In other words, before any

controversy arose as to the rights of the parties *inter sese,* he paid one-half of this debt and no more, which would seem to indicate that he then considered that he and his son were what their obligation indicated they were, namely, joint obligors."

A careful consideration of the entire evidence, which is somewhat lengthy, fully satisfies us that the court could not have properly reached a conclusion thereon less favorable to J. T. Black than that indicated in the foregoing extracts from the opinion. Such is the clear result from the testimony of J. T. Black and his two sons, J. L. and R. B. Black, showing without any serious conflict or contradiction the origin and development of the indebtedness to which the Bowling money was applied. It is true that certain statements of J. Lacy Black, if isolated from their setting and removed from the influence of his testimony as a whole, would tend strongly to prove that the entire Bowling debt was primarily owing by J. T. Black. And it is likewise true that if certain statements alleged to have been made by J. Lacy Black, not in the presence of J. T. Black and the evidence of which was objected to by J. T. Black, as to the primary liability of the latter, could be regarded as evidence against him, these statements would have a like tendency. So, too, as to the evidence given by the witness Cohron, who made the direct statement that the original loan was obtained from Bowling to pay debts of H. A. and J. T. Black, and that on his advice J. L. Black was brought into the transaction for better security. This testimony, however, was in the main essentially hearsay and was duly objected to on that ground; it is utterly inconsistent with the relationship which the uncontradicted evidence shows J. L. Black bore to much of the indebtedness; and, moreover, the witness giving the testimony was shown to be hostile to J. T. Black. The circuit court was fully justified in attaching, as it did, small weight to this evidence.

Nor do we think the result is affected by the clause in the original Bowling deed of trust which directs that the trustees, in case of sale, shall "sell first the lands conveyed by J. T. Black and if a sufficient amount is derived to pay the debt and costs, will not make further sale." Undoubtedly the existence of this clause in the deed is a circumstance tending to show that J. T. Black was the principal debtor, but it is a circumstance which would be conclusive of that fact only in the absence of countervailing proof. Other parts of the deed of trust indicate that the bonds secured thereby were joint bonds, and the extrinsic evidence leaves no room to doubt that they were so, both in form and in fact. As between themselves, there was no valid reason why this father and son might not have agreed to this order of sale from motives in no way affecting their relationship to the indebtedness. It was a matter of no concern to the creditor, and as to which he could have no voice if his debt was paid. The debtors might have changed the order of sale by direction to the trustee at any time after the deed was made. Of course the trustee could not have changed that order without their direction or consent, and this is all that is meant by the authorities invoked by the appellants for the proposition that sales under deeds of trust must be made in the manner and order therein directed.

Without extending further the discussion of this branch of the case, we have no hesitancy in saying that the clear weight of the evidence supports the finding of the circuit court as to the respective liabilities of J. T. and J. L. Black upon the Bowling bonds.

But it is contended by the appellants that even if J. T. Black is primarily liable for only one-half, and is the surety of J. L. Black as to the other half of the Bowling debt, the conditions have not yet arisen to entitle J. T. Black to be subrogated to the rights of Andrew Bowling because as

yet J. T. Black has in fact paid only his own half of the debt to Bowling. There is no merit in this contention. It is true, as a general proposition, that before a surety is entitled to be subrogated to the rights of the creditor against the principal debtor, he must have actually paid or satisfied the debt, but, where the rights of the parties are clear, a court of equity, in carrying out the principles underlying and constituting the doctrine of subrogation, will take the shortest road to the right and justice of the individual case. The doctrine "has nothing of form, nothing of technicality, about it; and he who in administering it would stick to the letter, forgets the end of its creation, and perverts the spirit which gave it birth. It is the creature of equity, and real essential justice is its object." *Enders* v. *Brune,* 4 Rand. (25 Va.) 447. It "has been denominated one of the benevolences of the law, created, fostered and enforced in the interest and for the promotion of justice. * * * In no other jurisdiction has the doctrine been more firmly adhered to or more liberally expounded and applied, to meet the exigencies of particular cases, than in Virginia." *Sands* v. *Durham,* 99 Va. 267, 38 S. E. 145, 54 L. R. A. 614, 86 Am. St. Rep. 884.

In this case, as we have seen, J. T. Black, with the proceeds of a part of his land, has paid one-half of the Bowling debt, being all that he was bound for as principal. The lands of J. L. Black and wife have been sold for more than enough to pay the balance of the debt, and the proceeds are now in this cause subject to the order of the court. It would be a vain thing for the court to require the balance of J. T. Black's land to be sold, use the proceeds to pay the balance of the Bowling debt, and then reimburse J. T. Black from the proceeds realized on the sale of the lands of J. L. Black and wife. The circuit court, therefore, was entirely right in its decree, directing Bowling to be paid the balance of the debt from the funds in hand, and making proper

reference to a commissioner to adjust the equities arising out of the fact that some of the land of Patsy Black, who was not liable at all except as surety for her husband, has contributed to the payment.

Having decided that the direction to the trustees to sell the J. T. Black land first and to stop there if enough money was realized to pay the Bowling debt, was a matter over which the grantors in the deed had control and in which the secured creditor could have no voice if his debt was paid, it becomes unnecessary to consider the appellants' further contention that if the entire debt had been paid by a sale, as directed in the deed, of the J. T. Black land, such sale would have exhausted the function of the deed of trust and defeated any claim to subrogation on the part of J. T. Black. This contention, and the authorities cited to sustain it, could only avail the appellants in case they could maintain their original proposition that J. T. Black was the principal debtor as to the whole debt. If he was in fact merely the surety as to the unpaid half of the Bowling debt, and his land had been sold therefor, the mere fact that the deed of trust directed his land to be sold first would not have prevented him from showing the actual relationship of himself and J. L. Black to the indebtedness, and that fact being shown, his right of subrogation would have followed as a matter of substantial equity and right. The debt, in that event, would be paid and satisfied, but equity would keep the lien alive for the benefit of J. T. Black. *Leake* v. *Ferguson*, 2 Gratt. (43 Va.) 433; *Gatewood* v. *Gatewood*, 75 Va. 407; 37 Cyc. 411.

Finally, it is claimed by the appellants that, conceding J. T. Black to have been primarily obligated as to only one-half of the Bowling debt, he is estopped by the terms of the deed of trust from setting up that fact as against the subsequent creditors of J. Lacy Black. It was upon this point alone, as we understand the commissioner's report,

that he found against the position asserted on this appeal by J. T. Black. In other words, the commissioner and the court seem to have reached the same conclusion upon the evidence as to the actual and true original relationship of J. T. and J. L. Black to the Bowling debt. Both the commissioner and the court evidently regarded them as joint makers of the bonds. This conclusion, which was manifestly correct, renders the decree complained of necessarily right, unless J. T. Black is estopped from asserting his true position. In our opinion, the circuit court was right in holding that he was not so estopped.

As an original proposition, the court was plainly correct in saying, in the opinion already cited, that "a stream cannot rise higher than its source. The rights of Lacy Black's creditors are the rights of Lacy Black;" and the mere fact that one clause in the deed of trust tended to show that J. T. Black was the principal debtor, and that none of the lands of J. L. Black and wife would be subjected to the Bowling lien if the J. T. Black land was sufficient to pay it, did not give the creditors any higher rights than they would have had if the deed had been silent on the subject. It is true that two of the general creditors introduced proof to the effect that they extended credit to J. Lacy Black on account of the provisions of the deed of trust, but there is nothing whatever in the record to connect J. T. Black in any way with this action on their part, or to show that he ever had any intimation that they were being influenced by what they claim to have believed was his relationship to the Bowling debt. As to the majority of the creditors, there is no evidence at all that they so much as had actual knowledge of the existence of the deed of trust or of its contents, and, of course, therefore, none that they were influenced thereby to extend credit to J. L. Black. Not a single one of them ever made any inquiry of J. T. Black, as they might easily have done if they intended to rely upon

their present contention.   He made no representations to any of them; and he could not have had any purpose to defraud them by the language in the deed, because their debts were not in existence when the deed was made.   That deed indicated on its face that the bonds secured by it were the joint bonds of J. T. and J. L. Black, and showed furthermore, that if, in any event, all the lands embraced therein should be sold and any balance remained over and above the debt and costs, such balance would belong to J. T. Black and J. L. Black and wife, "as their interests in the said lands and the price derived for the same" might entitle them.   Inasmuch as he made no representations to them, and they sought no information from him, all of the general creditors must rest their claim to estoppel as against J. T. Black solely upon the existence in the record of language employed before their debts had been contracted, which language, taken with the entire context, was equivocal and uncertain.   Under these circumstances, it is clear, upon familiar and settled principles, that the claim of estoppel must fail.   *Bargamin* v. *Clark*, 20 Gratt. (61 Va.) 544, 552; *Repass* v. *Richmond*, 99 Va. 508, 511, 39 S. E. 160; *Taylor* v. *Cussen*, 90 Va. 40, 43, 17 S. E. 721; *Atkinson* v. *Plum*, 50 W. V. 104, 40 S. E. 587, 58 L. R. A. 788.

There was no error in the decree complained of, and it must be affirmed.

*Affirmed.*

SIMS, J.., dissenting:

I concur in the above opinion in so far as it holds that as between themselves J. T. Black and J. Lacy Black were each bound as principal debtor for one-half of the Bowling $20,000 deed of trust debt and as surety for each other respectively for one-half of such debt; but I cannot concur in the view that, as against the appellants, lien creditors of J. Lacy Black and wife, J. T. Black is entitled to any preferred lien on the property of J. Lacy Black and wife,

with any right to have such property subjected to such lien, and the proceeds of sale thereof applied to the payment of the unpaid half of said debt in preference to the rights of appellants to have such property subjected to their lien and the proceeds of sale applied in accordance with such lien to their debts and to said unpaid half of the said Bowling debt *pro rata,* as per the last deed of trust of date December 17, 1914, executed by J. Lacy Black and wife.

This conclusion I feel necessarily results from a consideration of the rights of the respective parties as fixed by the deeds of trust executed by J. T. Black and J. Lacy Black and wife, which fixed the lien rights of the appellants.

When J. T. Black paid the half of said Bowling debt for which he was bound as principal debtor, the remaining half of such debt was the debt of J. Lacy Black as principal and of J. T. Black as his surety. By the last deed of trust above mentioned J. Lacy Black and wife gave a lien on the real and personal property conveyed thereby to secure, along with the general debts therein mentioned, among which were the debts of appellants, "any and all other debts which may be asserted against the parties of the first part" (J. Lacy Black and wife) "although they may not be herein specifically set out." The said indebtedness of J. Lacy Black as principal for said unpaid half of said Bowling debt was therefore thereby secured as a lien upon the property thereby conveyed in the same class and of the same dignity as to priority as the debts of appellants. Under this deed of trust J. T. Black was given, indeed, directly no lien, but the said unpaid half of the said Bowling debt was given a lien of the same dignity as the lien of the debts of appellants, which in equity J. T. Black has the right to have enforced to his exoneration as surety and to his relief upon his liability as surety to the extent that the said unpaid half of said Bowling debt may be paid off and discharged as the result of enforcing such lien.

Has J. T. Black, as against appellants, lien creditors of J. Lacy Black and wife, the right to the benefit of any other lien?

No other lien was, at any time, expressly given to him by J. Lacy Black and wife; and after the last deed of trust from them was executed and recorded, it was beyond their power to do anything to give J. T. Black any lien in preference to the lien given by such deed of trust to appellants.

The claim of J. T. Black, however, is that he is entitled in equity, by subrogation, to have the lien of the first deed of trust, mentioned in the above opinion, to the extent that it secures the payment of the unpaid half of said Bowling debt, enforced against the property of J. Lacy Black and wife conveyed thereby, to his exoneration as surety on such part of such debt. Let us see how this will work out upon well settled principles.

If we disregard the objection that J. T. Black would not have any right of subrogation until he in fact paid out money as surety and treat him as if he were in the position of having paid the whole of said Bowling debt, what right would he have to ask that the property of the latter conveyed by said first deed of trust be subjected to satisfy the half of such Bowling debt for which J. Lacy Black was the principal debtor? His rights must stand or fall under the provisions of such deed of trust as they existed at the time of the execution of the last deed of trust, as against appellants who were given rights as lien creditors by the last deed of trust.

If, then, we treat J. T. Black as having paid the whole of said Bowling debt, what would be his rights under said first deed of trust? Why, plainly he could be subrogated only to the rights of said Bowling debt to the extent of the unpaid half of it for which he was surety.

By the express terms of the first deed of trust, "In enforcing said deed, said trustee will sell first the lands con-

veyed by J. T. Black and if a sufficient amount is derived to pay the debt and costs, will not make further sale under this deed."

A court of equity could give to J. T. Black only the right of subrogation to such rights as the first deed of trust would have given said unpaid half of the Bowling debt had it remained in the hands of Bowling. These rights were subject to and could not escape the effect of the provision next above quoted.

The provision above quoted should not be ignored by the court. It was embodied in the deed of trust by the parties thereto, and there could be no sale except in accordance therewith. 3 Jones on Mort., sec. 1778.

That is to say, by such subrogation J. T. Black could have acquired no right to enforce such first deed of trust against the lands of J. Lacy Black and wife, save only in the event that the lands of himself conveyed by such trust deed were insufficient to pay the whole Bowling debt and costs. As it is conceded in the case that J. T. Black's lands were amply sufficient to do this, J. T. Black by such subrogation could acquire no right whatever to subject, or have subjected, the property of J. Lacy Black and wife conveyed by such first deed of trust; hence, the subrogation he asks would be barren of any beneficial result to J. T. Black— could give him no lien, nor the benefit of any lien, on the lands of J. Lacy Black and wife.

With respect to the position that the debtors, J. T. Black and J. Lacy Black and wife, might have changed "the order of sale by direction to the trustee at any time after the deed was made," I do not feel that this could be done so as to abrogate such a provision as that embodied in the deed of trust under consideration, after the lien rights of appellants had attached. I think that such provision, in effect, withheld any power of sale being given by the trust deed of the property of J. Lacy Black and wife conveyed thereby,

except upon condition that all of the lands of J. T. Black thereby conveyed should prove insufficient to pay the debt and costs—that is to say, it was in effect a case where the property of J. Lacy Black and wife was not conveyed by such deed of trust subject to any lien of the Bowling debt, except only in the event that the J. T. Black lands conveyed thereby were all insufficient to pay such debt and costs. Therefore, for J. T. Black and J. Lacy Black to be allowed to change such order of sale would be, in effect, to allow them to execute and record a new deed of trust, with materially and vitally different terms from the first deed of trust, giving unconditional power of sale for the benefit of the Bowling debt. This of course could not be done after the third deed of trust under which appellants' liens attached, so as to take away from appellants their lien as fixed by such third deed of trust.

This is a different case from that of a deed of trust with the usual provisions unlimited by such a provision as we find here. In the case of a trust deed with only the usual provisions, there is nothing which prevents any of the property conveyed thereby from being liable to be subjected by sale, subject to the discretion of the trustee as to the order of sale. The trustee is left by the deed of trust in such a case free to exercise such discretion. In the case before us the trust deed did not leave the trustee free to exercise such discretion, but in express terms withheld from him such discretion, by providing, in effect, that the property of J. Lacy Black and wife should not be sold by him at all save only upon a certain single specified condition, which condition could not be ignored or changed by the trustee, or indeed by the parties themselves to the deed of trust, to the injury of appellants after the rights of the latter as subsequent lien creditors attached to such property.