(33 Misc. Rep. 626.)

HARLEY et al. v. MAPES REEVE CONST. CO. et al.

(Supreme Court, Special Term, Kings County.    January, 1901.)

1. MUNICIPAL CORPORATIONS—BOARD OF PUBLIC IMPROVEMENT—CONTRACTS.
    City Charter, § 419, prescribing the requisites for making contracts for
    the city of New York, though included in the chapter relating to the board
    of public improvements, is not restricted thereto, but applies to all depart-
    ments of the city government.

2. SAME—BUILDING CONTRACTS—DEFAULT—SURETY—LIABILITY.
    Where a surety elected to complete the work on a contract on the con-
    tractor's default, afterwards making a new contract, by which it again
    signed as surety for a substituted contractor, the surety was liable on all
    liens for labor and material furnished from the beginning, since it took
    the place of the original contractor, and was bound from the beginning,
    as much as he, to fulfill its contract.

3. SAME—NEW CONTRACT—RESOLUTIONS—EFFECT.
    Where a contractor defaulted, and the surety on the contractor's bond
    elected to complete the contract, which called for additions to a school
    building, the fact that the building committee of the board of education,
    on obtaining a new contract from the surety, passed a resolution declaring
    the original contract "voided and forfeited," would not relieve the surety
    from liability on mechanics' liens accruing before the default.

4. SAME—DEFAULTING CONTRACTOR—ASSIGNMENTS—EFFECT.
    Where a building contractor defaulted, and its surety took its place in
    completing the work, assignments of the money to become due on such
    contract, made by such contractor before the filing of any mechanics' liens
    against the building, would not affect such liens, since all payments were
    due to the surety after the contractor's default, and none to the con-
    tractor.

5. SAME—MECHANICS' LIENS—DISREGARD—PAYMENT.
    Where a surety continued the work on school buildings after default of
    a contractor, and the city paid the installments coming due on the con-
    tract to such surety from the time it came in to complete the work, in
    disregard of liens filed against the original contractor, the city paid the
    money in its own wrong, and hence such action would not affect the lien-
    or's rights to payment in full.

Action by James Harley and others against the Mapes Reeve Con-
struction Company and others.    Judgment for plaintiffs.

Action to foreclose a mechanic's lien.    The defendant the Mapes Reeve
Construction Company as party of the second part, and the defendant the
American Bonding & Trust Company as party of the third part, entered into
a written contract with the defendant the board of education of the city of
New York to do repairs and make additions to a school house for $44,800 pay-
able in 11 installments as the work progressed.    The said construction com-
pany is called principal and the bonding company surety therein, and both
bind themselves together in the same clause and words that the former will
do the work.    The said contractor company went into dissolution proceedings
in the supreme court and defaulted on the said contract on November 13,
1899, which was after the fifth installment had been paid.    The building com-
mittee of the board of education gave to the said contractor and surety a
notice of three days required by the contract that unless the work proceeded
the contract would be forfeited.    The surety thereupon offered to complete
the contract and the said committee assented.    The plaintiffs' lien for work
and material was filed after payment of the said fifth installment and on
the same day that the contractor stopped work.    The sixth installment was
not yet earned.    Other lienors and the city of New York are also parties
defendant.    Other facts are stated in the opinion.

George W. Titcomb, for plaintiffs.

William Hughes, C. W. Bangs, Robert H. Roy, W. F. Kimber, and Robert H. Wilson, for defendants.

GAYNOR, J. After a careful reading of the agreed statement of facts and the other evidence I find as a matter of fact that when the contractor abandoned the work the surety informed the board of education that it would go on with the work and complete the contract, and that thereupon it did so with the consent of the said board.

When the contractor abandoned the contract, viz., on November 13, 1899, its surety had the right to take its place and carry out the contract. This was so by the terms of the contract; and also as a general proposition of law. The surety as a third party to the contract bound itself for the performance of the contract and had the right to perform it if its principal failed. That is what its suretyship was for.

If the surety had failed to continue the work after the contractor's default, and service on both of them of the notice provided for by the contract that unless the work proceeded the contract would be forfeited, the board of education would have had to readvertise the remaining work for bidders and relet it to the lowest bidder. City Charter, § 419. The surety would then have been liable for any excess in the cost. The contention that this section of the charter relates only to the board of public improvements, because it comes under that head and chapter in the charter, cannot be sustained. It expressly applies to all of the departments of the city government. In construing a scientific instrument of government a court would be inclined to limit the scope of its provisions according to the heads under which they were classified; but this can have no application to a mere bungle like the charter of the city of New York.

Instead of submitting to a forfeiture of the contract, the surety on receiving the said notice gave the board of education notice on November 20, 1899, and thereafter, that it would complete the contract, and it proceeded to do so. This is the sum and substance of all that occurred. The forms and formalities resorted to make it neither more nor less.

Though no new agreement was necessary, the surety being bound by the original contract to complete the work, a written agreement was thereafter executed, viz., on January 17, 1900, by the board of education and a person produced by the surety as its representative, for the completion of the original contract by him on payment as they came due of the remaining installments thereof, aggregating $24,000; and to this new agreement the surety signed again as surety. This agreement added nothing to the surety's already existing obligation under the original contract. It was a mere matter of form in the carrying out of the original contract by the surety, it being conceded on the trial, and now in the requests of the defendant surety to find, that the nominal contractor stood in place of and for the surety; and this was understood at the time by all concerned as plainly appears from all that occurred.

Why the so-called new contract was made at all is not apparent, for it created no new obligation whatever. Twelve days afterwards, viz.,

on January 29th, the building committee of the board of education on the request of the attorney at law of the surety, and the advice of the corporation counsel that it would be proper, passed a resolution declaring the original contract "voided and forfeited"; but it does not seem that this could have changed the status which the surety had already assumed in relation to the original contract and the default of the contractor thereunder; at all events in respect of third persons. And plainly there was no such change. The surety was already engaged in carrying out the original contract and it continued therein to the end. There had been no forfeiture by it, but only by the contractor; and this resolution had reference to no other. It created no new forfeiture; it only affirmed an existing condition. The object of the surety in procuring this unnecessary resolution is not apparent, unless it grew out of an afterthought to try to get rid of all previous mechanics' liens. But it is too much to believe that the committee of the board lent itself to such a purpose, after the surety had elected to complete the contract, and was actually at work doing so. If they did, their action was legally in bad faith and collusive.

When the surety elected to complete the contract, it took the place of the contractor. The law is not that it thereby only took the possible benefits of that position. Its position was no different to that of an assignee of the contract. Such an assignee would take subject to all prior mechanics' liens; and so did the surety. The surety as well as the contractor was primarily bound from the beginning to complete the contract. Every person who furnished work or material to the contractor did so in view of this, and of the legal right and possibility of the surety electing to go on with the contract if the contractor failed. If the surety had refused to do so, the lien of the existing mechanics' liens would thereby have been limited to any amount due to the contractor when he abandoned the work; but on electing to complete the contract the surety could not evade such liens; they continued valid against every installment to come due on the contract, the same as though the contractor had not failed. Such liens as soon as filed were equally valid against the contractor and the surety. Each of them had the right to carry out the contract, and it mattered not to the lienors which should do so. The contract was in fact carried out and completed. That the first half of it was done by the contractor and the second half by the surety is of no more concern to the lienors than if the first half had been done by the surety and the second half by the contractor, or all of it had been done by the surety or by the contractor, or they had done it together. They were each primarily bound by the contract from the beginning that the work would be done. Brandt, Sur. § 1; Baylies, Sur. 134, § 2. The plaintiff and the other lienors did work and furnished material with that in view, and under the lien law, and for the purpose of their liens they were as much in privity with the surety as with the principal.

The case of Knapp v. Swaney, 56 Mich. 345, 23 N. W. 162, was like the present one. The contractors defaulted and the sureties took their place and went on and completed. They sought to compel payment to them by mandamus without regard to prior liens filed for work done for the contractors. The only difference of fact is that

they took an assignment of the contract from the contractors. But I do not see how that could make any legal difference; at all events in the present case. This present surety did not need such an assignment; it was a party to the contract, bound for its fulfillment, and had the right to go on with it without leave or license from the contractor after the latter had abandoned the contract. In the case cited Chief Justice Cooley said:

"The claims" (liens) "in this case appear to be claims against Allen & Van Tassel" (the defaulting contractors), "not against the relators" (the sureties). "In our opinion that is an immaterial fact. The relators step into the shoes of the contractors, and can claim nothing under the contract which Allen & Van Tassel themselves could not have claimed."

Two cases are cited against the foregoing, Weisemair v. City of Buffalo, 57 Hun, 48, 10 N. Y. Supp. 569, and McChesney v. City of Syracuse, 75 Hun, 503, 27 N. Y. Supp. 508; but they are not in point. In the former the learned reporter says: "The action was brought to enforce the payment of an amount claimed to be represented by mechanics' liens which had been filed," etc. This is very loose and blind. It gives no idea of what the action was. From the opinion it seems that it was not a suit to foreclose a mechanic's lien, but an action against the city alone for damages for having paid the contract money although the mechanics' liens of the plaintiff had been filed. Whether this was a cause of action was all that was up, and what the learned judge writing said outside of that was not an official utterance and binding. The opinion says that the contractor having abandoned the work the sureties on notice completed it under a contract between them and the defendant city that it would pay them therefor the balance remaining unpaid on the original contract. The mechanics' liens had been previously filed, but after the contractor had quit. The precise terms of the contract of surety do not appear. The opinion later says that "the contract with the sureties" (i. e., to complete) "was a new contract and could not inure to his" (the contractor's) "benefit nor to that of his lienors." No such question was involved in the case; and I own I do not understand this observation otherwise than on the precise statement that the contract with the sureties was not the same as their original contract, but a new one in substance and in law; and that they did not complete the work under the original contract, though the fore part of the opinion would indicate that they did. And the apparent assumption that the agreement of the surety to complete could not inure to the benefit of previous lienors unless it was being carried out for the benefit of the contractor, seems to me to be without any foundation in law. A surety who is bound by the contract to complete it does not do so for the benefit of the contractor who has abandoned it, and all rights under it, but under his own legal right and obligation to complete it. The opinion cites two cases for the dictum quoted above, but they have no bearing on it whatever. The other case was a suit to foreclose a mechanic's lien. The contractors having failed to carry out the contract made a general assignment for the benefit of their creditors. Their assignee (says the opinion) was also "surety on a bond" given by them "to secure the performance of the contract on their part." This is all the case as re-

ported discloses as to the suretyship. Its precise or substantial terms, not being given, it does not appear whether the surety had the right under the original contract to complete the work. He did complete it, but at a cost greater than the amount remaining unpaid on the original contract. The plaintiff claimed that his lien, which was filed before the surety began the work of completion, was good against the said amount remaining unpaid on the original contract, and that he was entitled to it as against the surety to the extent of his claim. But this was put on the sole ground that the surety did not individually complete the contract, but as such general assignee of the contractor, and therefore on the contractor's account. This question of fact the court decided against the plaintiff, and no other question was presented or decided. No claim was made that the surety as such took the place of the contractor and completed the contract under his contract of suretyship, and the point is not mentioned at all. Hence the actual decision is not here in point.

Many other cases have been cited to the point that when the owner elects to and does complete the contract for the contractor's account, the prior mechanics' liens are good only against the surplus of the contract price remaining unexpended after the contract is completed; but this is plainly not in point. The owner is of course only liable to the extent of the contract price. He cannot be made to pay double. No question in respect of the owner's measure of liability to lienors is up here. The sole question is whether this surety who was by the contract liable with the contractor from the beginning for the carrying out of the contract, and who elected to and did complete the contract, as he had the right to do, does not stand in the same relation to prior liens as though he were the contractor. The contention on behalf of this surety defendant is that such a surety may step in clear of all previous liens or claims at whatever point the contractor may abandon the contract, and complete it. If this be so, contractors and sureties have a plain and sure way of colluding to swindle which has not hitherto been resorted to only because it has not been deemed to exist.

Before the said contractor company went into dissolution, and before any mechanics' liens were filed, viz., on October 14, 1899, it assigned to one Reeve all moneys due or to grow due to it under the said building contract, and he assigned the same to two banks, and all of such written instruments of assignment were filed in the office of the comptroller of the city before any of the mechanics' liens were filed. After the filing of such liens, and after the said surety had entered upon the completion of the said contract, the said banks reassigned the said moneys to the said Reeve, who thereupon assigned the same to one Flanders, who acted in the matter for and as the representative of the said surety. But such assignments need not be considered, for no money was due to the said contractor company on the said building contract at the time it made the said assignment to Reeve, or came due to it thereafter. No money came due to it after it abandoned the contract; all of the subsequent installments came due to the surety. It took the contractor's place and completed the contract, but in doing so it did not represent the contractor but itself

as a party to the contract, and it was not obliged to account to the contractor at all.

The amount due on the plaintiffs' lien is $2,279.85, and the total amount due on the other liens is $7,098.66. The city has only $4,000 of the contract price remaining in its hands. But in disregard of the liens it has paid to the surety $20,000 of the money that came due to the surety under the original contract after the surety came in to complete it. This can make no difference to the lienors. As to them the city paid the money in its own wrong, as the legal phrase is.

Judgment accordingly.