## MARYLAND CASUALTY CO. v. BOARD OF WATER COM'RS OF CITY OF DUNKIRK, N. Y., et al.

District Court, W. D. New York.

Aug. 6, 1930.

See, also, 27 F.(2d) 142.

Gibbons & Pottle, of Buffalo (Frank Gibbons, of Buffalo, N. Y., George F. Cushwa and Richard Pausch, both of Baltimore, Md., and Maynard C. Schaus, of Buffalo, N. Y., of counsel), for complainant.

A. E. Nugent, of Dunkirk, N. Y., for defendant Board of Water Com'rs.

T. P. Heffernan, of Dunkirk, N. Y., for defendants H. Schriber Sheet Metal Co. and Norwood Engineering Co.

Joseph C. White, of Dunkirk, N. Y., for defendant Dunkirk Dock Corporation and others.

J. L. Hurlbert, of Dunkirk, N. Y. (Philip A. Laing, of Buffalo, N. Y., of counsel), for defendant Merchants' Nat. Bank and others.

Palmer & Rowe, of Dunkirk, N. Y. (M. L. Rowe, of Dunkirk, N. Y., of counsel), for defendants W. W. Phinney Plumbing & Heating Corporation and others.

Locke, Babcock, Hollister & Brown, of Buffalo, N. Y. (H. W. Huntington, of Buffalo, N. Y., of counsel), for defendant U. S. Cast Iron Pipe & Foundry Co.

William S. Stearns, of Fredonia, N. Y., for defendant Arthur P. O'Connell.

Stanley & Gidley, of Buffalo, N. Y. (Ellis H. Gidley and Arthur E. Otten, both of Buffalo, N. Y., of counsel), for defendant Warsaw Elevator Co.

Shire & Jellinek, of Buffalo, N. Y. (Joseph Swart, of Buffalo, N. Y., of counsel), for defendant Buffalo Steel Co.

Wilcox & Van Allen, of Buffalo, N. Y. (E. H. Farnham, of Buffalo, N. Y., of counsel), for defendant Buffalo House Wrecking & Salvage Co.

Elton D. Warner, of Dunkirk, N. Y. (Joseph C. White, of Dunkirk, N. Y., of counsel), for defendant American Locomotive Co.

Glenn W. Woodin, of Dunkirk, N. Y. (Joseph C. White, of Dunkirk, N. Y., of counsel), for defendant Dunkirk Lumber & Coal Co. and others.

Palmer, Garono, Houck & Wickser, of Buffalo, N. Y. (D. W. Haring, of Buffalo, N. Y., of counsel), for defendant Western New York Par-Lock Appliers Co.

ADLER, District Judge.

This is an action in equity in which the rights of all parties to the action are to be determined. The relationship of the parties and their various claims will be hereinafter set forth.

The board of water commissioners of the city of Dunkirk, N. Y., a municipal corporation, in the year 1925, engaged the J. N. Chester Engineers of Pittsburgh, Pa., to prepare plans and specifications for the erection of a filtration plant and clear water basin for the city of Dunkirk. The contracts for the project were awarded to the Loyd Contracting Company in 1926. Two contracts are concerned in this case—one for the filtration plant for $136,900; another for the clear water basin for $14,000. Bonds covering both of these contracts were written by the Maryland Casualty Company of Baltimore, Md., the plaintiff in this action. Some of the conditions of these bonds will be set forth when the liability of the surety is considered.

The Loyd Contracting Company began work under the contracts in 1926. When it applied to the Maryland Casualty Company to write the bonds, it assigned to the bonding company all of its interest in and to the moneys to be received upon the two contracts. Thereafter, in the fall of 1926, the Loyd Contracting Company executed another assignment of its interest in the moneys to be received under these two contracts to the Merchants' National Bank of Dunkirk, N. Y. From time to time while the work was under way the Loyd Contracting Company borrowed money on its notes from the Merchants' National Bank.

In July, 1927, the engineers in charge of the work for the board of water commissioners certified to them that the contracting company had failed to pay for labor and material and that the work was not progressing satisfactorily. Thereupon the contracting company and its surety were cited to make answer to the certificate of the engineers, and on July 28, 1927, proof was taken relative thereto. Thereafter the board of water commissioners adopted a resolution terminating the employment of the Loyd Contracting Company, taking possession of the property, and requesting the Maryland Casualty Company to proceed at once and complete the contract. Conferences were had with representatives of the casualty company, and in the latter part of August, 1927, the Maryland Casualty Company entered into a contract with the Pitt Construction Company for the completion of the work described in the two original contracts. The construction work was completed and accepted by the board of water commissioners in the summer of 1928. Between July, 1927, and September, 1927, many liens were filed with the board of water commissioners on account of labor and materials furnished to the Loyd Contracting Company and used in this work. All of these lienors are parties to this action. Their right to recover is to be determined herein. Another class of defendants are those who have not filed mechanics' liens but who claim to have a right of action against the Maryland Casualty Company by reason of the terms and conditions of the bonds. Their rights are also to be determined in this action.

When the Loyd contract was terminated, a small amount of material on the ground and not yet worked into the structure was turned over to the Maryland Casualty Company for the completion of the contract. At that time the larger contract was about 85 per cent. completed and the smaller contract was about 30 per cent. completed. The amount retained and unpaid by the board of

water commissioners on both contracts at the time of the trial was about $46,000. The contract price in the contract between the Maryland Casualty Company and the Pitt Construction Company for the completion of the work was $50,750. Extra work, including additional excavation and filling, brought the cost of the work of completion according to the Pitt Company's estimate up to $65,000.

First. It is the contention of the Maryland Casualty Company that a new contract was made between it and the board of water commissioners following the termination of the Loyd contract, and that it did not complete the Loyd contract as its surety.

When the board of water commissioners had determined that the Loyd Company was not going to satisfactorily complete its contracts, it passed a resolution on July 28, 1927, and entered it on its minutes in the following language:

"Resolved, by this Board that the employment of the contractor, the Loyd Contracting Company, be and the same is hereby terminated, and further be it

"Resolved, that this Board take possession of the premises and all material, tools and appliances thereon and hold the same to be used by the person, corporation or company that shall finish the filtration plant according to the contract, and be it further

"Resolved, that the Maryland Casualty Company, the surety upon the bond of the Loyd Contracting Company be and they are hereby required to proceed at once and finish the contract of April 20, and August 12, 1926, of the Loyd Contracting Company which was guaranteed by them, and be it further

"Resolved, that all material, tools and appliances now on the job be turned over to the Maryland Casualty Company for the purpose of finishing the contract."

At the same meeting a resolution was entered on the minutes to the following effect:

"Resolved, that the Assistant Secretary wire the Maryland Casualty Company by night letter advising them of the action of the Board in regard to the Loyd contract, requiring an answer."

A further resolution was entered as follows:

"Resolved, that the Assistant Secretary send certified copy of the resolution adopted by the Board relative to the Loyd Contracting Company to the Maryland Casualty Company and the Loyd Contracting Company."

On August 17, 1927, a special meeting of the board of water commissioners was held at which a representative of the Maryland Casualty Company and an attorney of that company were present. At this meeting it was proposed by the attorney of the bonding company that the board of water commissioners enter into a contract with the Pitt Construction Company to complete the work. There was considerable discussion, and my conclusion from an examination of the minutes is that the board refused to enter into the contract with the Pitt Company, and that it was left to the bonding company to take such action with reference to the Pitt Company's completing the work as they chose to take.

A further meeting was held on August 25, 1927. At that meeting there were three representatives of the Maryland Casualty Company present. There was a long discussion, in which the representatives of the casualty company took part, which culminated in the passage of the following resolution.

"Whereas, the Maryland Casualty Company are completing the filtration plant which was left in an incompleted state by the Loyd Contracting Company at the time their employment was terminated, now, therefore, be it,

"Resolved, that the Board of Water Commissioners agree with the Maryland Casualty Company that they will pay for all work done by the Maryland Casualty Company in the completion of said filtration plant and clear water basin according to the engineers' estimate of work performed, retaining the fifteen per cent (15%) thereof until final completion; which fifteen per cent (15%) together with all retained percentages, will be due and payable thirty days (30) after the completion and acceptance of the filtration plant and clear water basin."

It appears from the evidence and exhibits in the case that, after the termination of the Loyd contracts, the work was completed by the Maryland Casualty Company in the manner and under the terms and conditions as prescribed in the original contracts made with the Loyd Company. The only question to be determined under this point is whether or not the Maryland Casualty Company, under the facts just set forth, was completing this work as the surety of the Loyd Company, or whether it made a new

contract with the board of water commissioners, thus entitling it to be subrogated to the rights of the board of water commissioners in reference to all payments on these contracts.

I have examined the contracts and the bonds in this case and the record of the proceedings of the board of water commissioners as they appear in the minutes at the time the contracts were terminated. I have studied the negotiations between the representatives of the Maryland Casualty Company and the board of water commissioners as they were entered on the records of the board. I have noted the conduct of the casualty company in its relations with the board of water commissioners during the period of the completion of the contracts after the default by the original contractors. I find that in every specific detail the original contracts were completed by the casualty company according to their terms.

■ The claims and demands of the casualty company, the plaintiff in this action, are based in large part upon the provisions of the contracts made by the board of water commissioners with the Loyd Company for which the bonding company was surety. All of the facts lead to the conclusion that what happened in this case was that the surety company elected to complete the contracts of its principal. When it did so, it took the place of the contractor. Harley v. Mapes, 33 Misc. Rep. 626, 68 N. Y. S. 191; Fidelity & Deposit Co. of Maryland v. Hay (C. C. A.) 9 F.(2d) 749.

■ The board of water commissioners, when it terminated the employment of the contractor by its resolution passed on July 28, 1927, did not put an end to the contract itself. Herrmann & Grace v. Hillman, 203 N. Y. 435, 96 N. E. 741; Fraenkel v. Friedmann, 199 N. Y. 351, 92 N. E. 666.

■ Second. As I have found that the surety stepped into the contractor's shoes and finished the work, the question of subrogation does not arise until the surety has fulfilled the contract of its principal according to its terms. Fidelity & Deposit Company of Maryland v. Hay, supra.

Third. Defendants in this action making claims upon the fund now in the hands of the board of water commissioners, and who furnished labor and materials which went into the construction of the filtration plant and clear water basin under these contracts, fall into two classes. In one class are those who filed liens under the provisions of the Lien Law of New York state (Consol. Laws, c. 33), and the other class are those who did not file liens, but who claimed a right of action against the surety under the provisions of the surety bond, for the labor and materials furnished by them in the construction of the work done under the contracts.

In the case of the liens filed, it appears that all of them were filed prior to the time when the surety company took over the work of completing the contracts. However, there is authority for the proposition that, if the surety stands in the place of the contractor, liens are valid if filed within the statutory period, even if the surety has taken over the contract before the time of the filing of the liens. Clarke Co. v. W. F. Plass & Bro., 107 Misc. Rep. 722–725, 174 N. Y. S. 436, affirmed in 187 App. Div. 904, 174 N. Y. S. 436.

The bond in this case contains the provision:

"Now, therefore, the condition of this obligation is such that if the said principal shall well and faithfully in all things perform the said contract in accordance with the terms thereof, and according to said specifications, in every particular, and without fraud, defalcation or delay, and shall indemnify and save harmless the said Board of Water Commissioners from all damages arising out of, or by reason of any negligence or default on either part, or on the part of any sub-contractor or the Loyd Contracting Company or their agents or employees, pay or cause to be paid the wages and compensations of all laborers who shall be employed in work on or about such improvement, whether by them or by any sub-contractor employed, and shall pay for all material furnished in or about such improvement whether to the Loyd Contracting Company or to any sub-contractor, then this obligation to be void, otherwise to remain in full force."

This condition in the bond indicates that it was the purpose of the contracting parties to give security to the laborers and materialmen as well as to the promisee. The purpose of including this provision could only be to definitely fix the legal relations of all the parties. Under such a provision in a bond, the rights given to third parties, such as laborers and materialmen, are given to them partly for the reason that these third parties are capable of affecting the rights of the beneficiary by reason of their power to file liens against the property. In nonlien cases their right under the surety bond is a donation, the consideration of which is the additional ad-

vantage in price and security given to the project by reducing the risk of nonpayment. An article in the Yale Law Journal, vol. 38, No. 1, on "Third Parties as Beneficiaries of Contractors' Surety Bonds," sets forth clearly the history and development of the law on this subject, with an exhaustive discussion of the leading cases.

In this case the validity of the liens filed and the rights and obligations of the parties are properly fixed by the statutes and decisions of the courts of the state of New York. I have found no federal authorities which call for the application of a different rule.

The rights of third parties and lienors under the provisions of surety bonds having provisions like the ones in this case have been clearly enunciated and determined by a number of decisions in the court of last resort in the state of New York. The latest of these is Fosmire v. National Surety Company, 229 N. Y. 44, 127 N. E. 472, the decision in which case was further elaborated and explained by Chief Judge Cardozo in the recent opinion in Johnson Service Company v. Monin, Inc., 253 N. Y. 417, 171 N. E. 692, 693. In this opinion Judge Cardozo, referring to a contractor who was without the benefit of a lien, uses this language:

"Its claim is within the condition of the bond, for it has supplied material and labor that have gone into the building. For a valuable consideration the contractor and the surety have covenanted with the municipality that payment shall be made to materialmen and laborers whether protected by a lien or not. If these are not paid, the promisee intervenes and collects for their use the payment that is due."

In my opinion the case we are now considering is clearly within the decision just quoted, in that the board of water commissioners in the pleadings in this equity action joined in the prayer that the surety be made to pay in accordance with its promise.

I therefore find that the defendants who have filed liens and the other defendants who have furnished labor and materials are entitled to recover the amounts that are hereafter found to be due them out of such funds as remain in the hands of the board of water commissioners applicable on these contracts, or from the surety.

Fourth. The Loyd Contracting Company in November, 1926, assigned to the Merchants' National Bank of Dunkirk, N. .Y., all sums of money due, and to grow due, and remaining unpaid to the Loyd Contracting Company on both contracts, and further assigned all moneys for extra work and extra compensation, for any cause whatever. The agreement further directed that all moneys and proceeds of said contracts, and for extra work, as hereby assigned, be paid out of the moneys payable under the terms of the contract.

By reason of this assignment, the board of water commissioners paid to the Merchants' National Bank on July 2, 1927, the sum of $7,067.83. It is the claim of the bank that an additional large sum of money was advanced to the contractors, and it argues that that part of this sum of money which was actually used in said contracts be paid to the bank under this assignment. In my opinion the equity of the surety in the fund in the hands of the board of water commissioners, after the liens and claims of labor and materials are paid, is superior to that of the bank loaning money to the contractor. This matter was passed upon and determined in the cases of Prairie State Bank v. United States, 164 U. S. 227, 17 S. Ct. 142, 41 L. Ed. 412; and Henningsen v. United States Fidelity & Guaranty Company, 208 U. S. 404, 28 S. Ct. 389, 52 L. Ed. 547.

Fifth. The complainant, the Maryland Casualty Company, asserts that it is entitled to recover on both contracts for the cost of excavation below the grade shown on the plan. It appears that it was necessary for the contractors to excavate for some distance below the lines which on the plan indicated rock or firm foundation. Additional excavation was made both by the original contractor and later, to some extent, by the Pitt Construction Company which completed the work under its contract with the Maryland Casualty Company.

The specifications, section 4, provide: "These drawings which form a part of the contract and specifications show the location of structure, approximate grades for excavation and embankment. * * * *"

The proposal blank which is a part of the contract, certified: "The undersigned, as bidders, declare * * * that they have made a personal inspection of the site of the proposed work and have made such investigations as are necessary to fully determine the character of the material to be encountered."

Section 25 of the specifications, provides: "The excavation * * must be carried to the foundation lines and grades as shown on the plan, or to such increased depth as may be necessary to obtain a firm foundation. An extra allowance will be made for

any extra excavation beyond that required by the plan which is ordered in writing, and this extra excavation will be paid for per cubic yard at the price bid upon under that item."

The Loyd Contracting Company made certain borings and bid $2 per cubic yard for extra excavation.

A large number of cases are cited by counsel on this point. In my opinion those cases in which the decision rests on the determination that the contract in the plans and specifications contained a warranty that rock or other specified conditions were to be found at a specified point do not apply. Simpson v. United States, 172 U. S. 372, 19 S. Ct. 222, 43 L. Ed. 482. Nor do I find that the plans were defective or that there was a deceptive representation of the material which would mislead the bidder and upon which the bidder could properly rely. The plans in this case fixed the rock level approximately at a certain point, and there was opportunity for the contractor to make his own borings. Upon the facts, I believe that Christie v. United States, 237 U. S. 234, 35 S. Ct. 565, 59 L. Ed. 933, relied upon by the complainant does not apply. Phœnix-Tempe Stone Co. v. De Waard (C. C. A.) 20 F.(2d) 757.

The case of United States v. Spearin, 248 U. S. 132, 39 S. Ct. 59, 61, 63 L. Ed. 166, states succinctly the general rules of law applicable to cases of this character. In the opinion the court says:

"Where one agrees to do, for a fixed sum, a thing possible to be performed, he will not be excused or become entitled to additional compensation, because unforeseen difficulties are encountered. Day v. United States, 245 U. S. 159, 38 S. Ct. 57, 62 L. Ed. 219; Phœnix Bridge Co. v. U. S., 211 U. S. 188, 29 S. Ct. 81, 53 L. Ed. 141."

The exceptions to that rule are where there are defects in the plans and specifications and where the contractor is misled by erroneous statements in the specifications. In the Spearin Case the court found a warranty that, if the specifications were followed, the sewer to be constructed would be adequate.

In the case of the contract under consideration, it was clearly stated that the figures at the foundation lines were approximate, and the bidder was asked to, and did, fix a price for additional excavation if it was found that additional excavation was necessary. As in my opinion there was no warranty, misrepresentation, or defect in the plans and specifications, the contractor is entitled, for the additional excavation, only to the $2 per cubic yard fixed in the contract.

Sixth. The Maryland Casualty Company, the surety completing the work on the contractor's default, makes a claim for certain overpayments which it contends were made to the Loyd Contracting Company, the original contractor, by the board of water commissioners.

Payments by the board of water commissioners must be justified as having been made in discharging all liabilities imposed by the contract, or by reason of work done under it. National Surety Company v. County Board of Education (C. C. A.) 15 F.(2d) 993. In determining whether these payments have been properly made and were not excessive, the contract and the conditions existing at the time of the payments must be given a fair and reasonable construction. Smith v. Molleson, 148 N. Y. 241, 42 N. E. 669. The testimony about many of these items of alleged excess payments is in a degree conflicting. I find that, if overpayment was made in any particular case it was not done collusively or fraudulently. The determination of whether overpayment was made in the particular cases cited will be made at the time of the settlement of the findings of fact.

Seventh. It appears that a certain amount of filling and grading was to be done under the contract at the outside of the structures and along the shore of Lake Erie. A considerable amount of this filling had been done, when it was practically all destroyed by a heavy storm on the lake the night of December 8, 1927. On that night the water of the lake reached its highest point in sixty years. After the storm, the contractor replaced this filling and was obliged to obtain the dirt for that purpose from a considerable distance. This greatly increased the cost of the work. It is the contention of the complainant that, as the contractor had disposed of the earth and made the grading according to the plans, it is entitled to be compensated for the expense of replacing the work. I find that as the contract called for the delivery of a completed structure, the board of water commissioners is not responsible for the expense of replacing the grading and embankment washed away by the waters of Lake Erie.

Eighth. As I have adopted the theory that the Maryland Casualty Company elected to complete the contracts of the Loyd Contracting Company, and in doing so took the place of its principal, the board of water

commissioners is entitled to deduct a proper charge for extra engineering services incurred by reason of the noncompletion of the contracts within the time specified.

Ninth. Such questions in this case as have not been dealt with in the opinion will be determined in the findings of fact and conclusions of law. The various parties may submit findings of fact and conclusions of law which will be settled upon notice.