MacDonald, etc. *v.* Calumet Supply Company et al.

[No. 27,086. Filed March 6, 1939. Rehearing denied June 12, 1939.]

*Arthur C. Gilliom, Howard P. Travis, Pickens, Gause, Pickens & Pickens,* and *Otto Fickeissen,* for appellant.

*Hodges, Ridgely & Davis, Gavit, Hall, Smith & Gavit, Donald Mote,* and *Samuel J. Offutt,* for appellee.

FANSLER, J.—In November, 1930, the General Construction Company contracted with the School City of Gary to furnish all of the material and labor for, and to construct, a school building, and furnished a performance bond with the Southern Surety Company of New York as surety. In June, 1931, with the building approximately one-third completed, the contractor defaulted, leaving unpaid bills for material and labor. The school city notified the surety that it would look to it for completion of the contract. At the time of the default of the contractor, it was indebted to various subcontractors, materialmen, and laborers, in connection with the contract, in a sum exceeding the amount that had been withheld by the school city, which was under the contract 15 per cent. of the estimated amount of work done, and which amounted to $20,582. The surety paid sufficient of the claims of the creditors of the contractor to reduce their claims to $20,053, which sum remains unpaid. The school city still retains the sum of $20,582, which is the fund involved in this litigation.

The court below found that the surety fully completed the contract. For the purpose of carrying out its obliga-

tion to complete the work, the surety entered into a contract with the appellant to do all of the work and furnish all of the material necessary to complete the contract, and the appellant immediately entered upon his contract and completed the original contract for the surety. Afterward the surety became insolvent, and the Insurance Commissioner of the State of New York began liquidation proceedings. The appellee Oscar Smith was appointed Indiana receiver for the company by the Marion Superior Court. In the receivership proceeding the court made an order directing the receiver to allow the school city to make payments under the contract directly to the appellant as estimates were made by the architect, and, pursuant to the receiver's agreement, the school city thereafter made all payments to appellant, including the amount finally determined due under the contract, except only the sum of $20,582 above referred to, which is conceded to be due under the contract, but which is withheld under section 53-201, Burns' Ann. St. 1933, section 14084, Baldwin's Ind. St. 1934, for the benefit of subcontractors, materialmen, and laborers. The appellant paid for all labor and material furnished by him in the completion of the work. He had no contract with the school city. His contract was exclusively with the surety, and the school city paid the surety upon estimates until the surety, through its receiver, directed payments to be made to the appellant. After crediting to the surety all payments made to the appellant by the surety, and by the school city at the direction of the surety, the surety is still indebted to the appellant for labor and material which he furnished for the completion of the building in the sum of $9,377.03, and, it seems, in an additional sum with which we are not concerned.

When the building was completed there was a conference between the appellant and the representatives of the school city, at which the surety or its receiver was not

represented, in which certain adjustments and deductions claimed by the city were agreed to, and the amount due the surety under the contract determined to the satisfaction of the school city. Of this amount the school city retained the sum of $20,582 above referred to, and paid to the appellant the balance amounting to $40,-279.03, in two checks, one of $10,000 payable to the appellant, and one of $30,279.03 payable to the appellant and a representative of the school city, to be held in joint account for the purpose of insuring the payment of unpaid bills for labor and material contracted by the appellant. All of such obligations have been paid. The settlement under which the payments last referred to were made to appellant was made less than sixty days after the completion of the work. The appellant thereafter, and within the sixty days provided by statute, filed his claim for labor and material furnished for the completion of the contract with the school board. Some of those who furnished material or labor to the original contractor filed claims with the school board within sixty days after they had performed their last labor or furnished their last material to the contractor, as provided by section 53-201 Burns' Ann. St. 1933, section 14084, Baldwin's Ind. St. 1934, *supra.* Others did not file claims. The appellee Calumet Supply Company began this action to collect the amount of its claim out of the fund, and the remaining claimants intervened or were brought into the action. The appellant filed a cross-complaint against the plaintiff and all of the unpaid creditors of the contractor, asserting his right to have the balance of his claim against the surety for labor and material allowed against the fund. Some of the defendants to this cross-complaint, including those who had not filed their claims with the school board within sixty days, as provided by statute, were defaulted.

It was the contention of the claimants who were credi-

tors of the original contractor that the appellant could not claim a lien or participate in the fund retained out of the estimates earned by the original contractor; that that fund belonged exclusively to those who had furnished labor, material, or services to the original contractor. It was also contended that, in the event the appellant had the right to participate in the funds, he had waived his right by accepting the final payment made by the school board in full payment of all claims against it.

There was a special finding of facts and conclusions of law thereon. The court found, among other things, that the appellant agreed with the school city that, in consideration of the checks that were given him, he would forego any claim that he might have had to the sum of $20,582, which had been withheld for the payment of claims. The court concluded the law to be that the claimants who were the creditors of the original contractor, including those who were defaulted and those who had not filed claims within the sixty days provided for by statute, were entitled to be paid out of the fund; and that after their payment in full the appellant was entitled to be paid any balance in the fund; and there was judgment accordingly. The appellant, by motion for a new trial, challenged the sufficiency of the evidence to sustain the finding above referred to, and assigns the overruling of his motion as error, and assigns error in the conclusions of law.

Whether the court's conclusion was based upon the contention that only the creditors of the original contractor were entitled to participate in the fund, or upon the finding that the appellant had waived his right to participate therein, is not disclosed by the record. It is therefore necessary to consider both questions.

The appellee claimants contend that in order for the appellant to claim as a subcontractor it will be necessary to give the surety the legal status of a contractor; that

the surety cannot be classified as a contractor because it had no contract; that it merely elected to finish the work to minimize its own loss; that, since it did not at any time become the general contractor, persons employed by it could not become subcontractors; that the laws are not designed for the protection of paid sureties or persons employed by them to minimize their losses; that the only purpose of the Lien Acts is to protect persons who have furnished material to the general contractor, and not to protect persons who may have furnished materials to a paid surety.

The right to be paid out of the fund arises out of the statute. Section 53-201 Burns' Ann. St. 1933, section 14084, Baldwin's Ind. St. 1934, *supra,* provides that when any public building is being constructed under contract it shall be the duty of the public agency to withhold final payment to the contractor "until such contractor has paid to the subcontractor or subcontractors, materialmen for material furnished, labor employed in such construction or those furnishing any service in relation to or in connection with such construction, erection, alteration or repair, all bills due and owing the same; Provided, That there is a sufficient sum owing to the contractor to pay all such bills, and if there is not a sufficient sum owing to such contractor on such contract to pay all such bills, then the sum owing on such contract shall be prorated in payment of all such bills among the parties entitled thereto," provided that claimants shall file a claim within sixty days after the last labor is performed or material furnished, and that where there is a dispute between the parties the balance due the contractor shall be withheld until the dispute is settled. Section 2 of the act, which is section 53-202 Burns' Ann. St. 1933, section 14085, Baldwin's Ind. St. 1934, provides that in all such contracts provision shall be made for the payment of subcontractors, labor, materialmen, or those

performing any service in connection with the building, by withholding funds sufficient from the contract price to pay the claimants, and that a good and sufficient bond shall be executed by the contractor, conditioned "for the payment by the contractor, his successors and assigns, whether by operation of law or otherwise, and by the sub-contractors, their successors and assigns, whether by operation of law or otherwise, of all indebtedness, which may accrue to any person, firm or corporation on account of any labor or service performed or materials furnished or service rendered as herein provided in the construction, erection, alteration or repair of any such building, work or improvement."

These statutes must be read into the contract. It becomes immediately apparent that the purpose of the law is not, as the appellees contend, "to protect persons who have furnished materials to the general contractor," but to secure "the payment of sub-contractors, labor, materialmen and those performing any service in relation to or in connection with said construction, erection, alteration or repair, by withholding . . . funds sufficient from the contract-price. . . ." Sub-contractors, materialmen, laborers, and those furnishing service are all on the same basis, and are all treated alike under the statute. If the contractor had defaulted and refused to begin the work upon the building, and the surety company had upon demand of the school board undertaken to carry out the contract by undertaking and completing the work from the beginning, and the surety company was still solvent, it would hardly be contended that those who furnished material that went into the building had no claim against the funds or right to a lien under the statute upon the ground that the surety was not the original contractor, and that the purpose of the law was not (to quote appellees) "to protect

persons who may have furnished materials to a paid surety."

When the surety took over the work it stood, for all practical purposes, in the shoes of the contractor. Its obligation was to perform his contract for him in terms, and to pay all subcontractors, materialmen, laborers, and those furnishing services which went into the building, and its right to compensation was limited by the statute, which provides that all such may have a lien upon the funds by filing a claim, and that if "there is not a sufficient sum owing to such contractor on such contract to pay all such bills, then the sum owing on such contract shall be prorated in payment of all such bills." The condition of the bond was that the contractor would perform his contract. The surety had bound itself that the contract would be performed, and when the contractor defaulted and the surety took over and undertook to complete the work it became the contractor, subject to all of the obligations, and entitled to all of the rights, of the original contractor in respect to the obligation under the contract to complete the building and to pay all subcontractors, materialmen, and laborers who contributed to the construction of the building, regardless of whether the services or materials were furnished while the original contractor was in charge or afterward. In respect to such matters, the surety became the successor, by operation of law, the assignee, of the original contractor. When the surety undertook to complete the building under the terms of the contract it was a going concern, and when it contracted with the appellant to complete the work, using the structure in so far as it had been built and the material on hand, it did nothing more than the original contractor might have done before default, and appellant was as clearly a subcontractor as though he had contracted with the original contractor. The money which was paid by the school

board to the appellant was money due the surety company under the contract which it was performing. It was paid to the appellant only because the receiver of the surety company had requested it, and if the receiver had not requested it, but had demanded all sums due under the contract, the appellant might have filed a claim for the amounts due him under his subcontract and thus claimed the benefit of the statute. The school board recognized that those who had furnished material to the appellant were entitled to a claim upon the funds due the surety company, and, to protect itself under the statute, required that he deposit $30,000 in a special fund to protect all such.

The appellees have cited *Maneely* v. *City of New York et al*. (1907), 105 N. Y. Supp. 976; *Harley et al.* v. *Mapes Reeves Const. Co. et al.* (1901), 68 N. Y. Supp. 191; *Smith* v. *Schile et al.* (1903), 80 N. Y. Supp. 1078; and *Electric Transmission Co.* v. *Pennington Gap Bank, Inc., et al.* (1923), 137 Va. 94, 119 S. E. 99, as supporting their position. We have carefully examined the opinions. They do not support the appellees' views, but support the views herein expressed. Cases are also cited to the effect that a surety completing a job is not entitled to a lien. But this is obvious, since its claim, like the original contractor's, is to the entire contract price, less the liens of others. Neither could the original contractor claim a lien, and yet those who were his subcontractors might claim one. In the cases last referred to it is held that a surety for the performance of a contract such as the one here in question is to be treated as a guarantor. See *McHenry* v. *Knickerbacker et al.* (1891), 128 Ind. 77, 27 N. E. 430; *Closson* v. *Billman et al.* (1904), 161 Ind. 610, 69 N .E. 449; *Hoosier Brick Co.* v. *Floyd County Bank et al.* (1917), 64 Ind. App. 445, 116 N. E. 87; and *Miller et al.* v. *Taggart et al.* (1905), 36 Ind. App. 595, 76 N. E. 321.

The finding which appellant questions, if it is supported by the evidence, must rest upon testimony concerning conversations between the appellant and representatives of the school board and a resolution appearing upon the records of the school board.

When the work was finished the appellant presented a verified claim to the school board for $49,656.06 for labor and material due him from the surety. It seems that there were other amounts which were not eligible to be filed as a claim, with which we are not concerned. This amount appears to have included bills for material and labor for which the appellant was liable. The appellant was pressing the school board to pay him the balance due the surety under the contract so that he might pay his bills for labor and material. The school board was concerned with determining the final amount due under the contract, and with its statutory duty to withhold enough to pay any claims for labor, material, or services that might be filed as a lien under the statute. It considered deducting $1,000 from the contract price because of some question about floor-hardening, but decided to waive this claim. A claim of $3,900 had been presented to the board by the architect for extra engineering expense due to delays, and the school board decided that it was liable for this and that it should be deducted from the contract price. The board then determined for itself that, in addition to the sum of $20,582, which it was withholding "for the payment of claims filed with the board for material, labor and service furnished to said project when the General Construction Company was on said construction," the balance due under the contract was $40,279.03. It was decided upon advice of attorneys to pay this amount to the appellant under the authority granted by the receiver for the surety, upon agreement of the appellant that all obligations owing by him for labor and material would be paid,

and that he would hold the school board harmless in that respect. These decisions and determinations of the board were made by resolution of record in its minute books. The only authority of the board to pay the balance due under the contract of the appellant was the authority granted by the receiver, and hence it must be treated as a payment to the contractor. It is obvious that this payment was made upon the assumption that claims had been filed for the full amount of the $20,582 which was withheld, and upon the assurance that no other claims would be filed, either by the appellant or those who had furnished labor or material under him. It was the statutory duty of the school board to withhold the final payment to the contractor until all claims filed had been paid, and to withhold sufficient funds to cover all claims that had been filed. It is clearly apparent that this was what the school board was endeavoring to do and intending to do, and it must be concluded that its purpose was to accomplish nothing more than this, and that it was contracting with the appellant in its own behalf and for its own protection, and that, under the facts as it assumed them to be, it was understood that the appellant and those who had claims under him were to file no further claims.

But there was a mistake in the facts. The claims on file which were a lien upon the contract price were something less than $15,000. The balance was due the contractor as part of the final payment, and it must be assumed that, except for the mistake in fact, the difference would have been paid as part of the final payment. In other words, it was clearly intended by the board that the appellant should waive his right to file a claim or a lien upon so much of the final amount due as was sufficient to pay those claimants who had filed claims and had a lien, and it was the intention of the appellant to waive as to such an amount. The school board had no right to withhold more than enough to

pay those claimants whose liens had been perfected, and it is not to be inferred that the board was seeking to coerce the appellant into waiving his claim to funds in its hands which it had no legal excuse to withhold. But it was clearly not the intention of the appellant to waive his claim as to any balance due under the contract which the school board was not required to hold because of the lien of claims filed. The appellant therefore, having filed his claim, is entitled to participate in any amount still due under the contract to which the lien of other claimants has not attached, and he is entitled to a lien on any such amounts, since his claim was filed within the statutory time. But if the appellant had not filed his claim and procured a lien, he would still be entitled to the balance, since it was due the surety, whose receiver had directed payment to him.

The court concluded that all of those who were shown to have furnished labor, material, or services to the original contractor, and who were not paid, were entitled to participate in the $20,582, regardless of whether they had filed a claim within the time required by statute, and including those who were not parties to the action, and those who had been made parties, served, and defaulted. This was clearly error. The right to a lien and to participate in the fund depends entirely upon the statute, and only those who filed their claims within the time provided by statute are entitled to a lien or to participate in the funds withheld.

Ten of the appellees, parties to the action, whose claims aggregate $14,323.03, perfected their liens. As against them the appellant had waived his rights. He had waived nothing as to the others, and, having perfected his lien, is entitled to have it allowed, and the balance of the fund applied to its payment.

Judgment reversed, with instructions to restate the

conclusions of law in conformity with this opinion, and to render judgment accordingly.

It is ordered that the costs be taxed to the appellees other than those who had perfected their liens within the statutory period, and the School City of Gary, and the receivers for the Southern Surety Company and W. F. Overly & Sons.

Roll, J., absent.

### ON PETITION FOR REHEARING.

FANSLER, C. J.—The School City of Gary and the Michigan City Erection Company have joined in a petition for rehearing, and the Symons Clamp and Manufacturing Company has filed a separate petition for rehearing.

The first petition referred to asserts that the school city had the right under the bond given by the surety company to pay non-lien claimants who furnished service, and that such claimants had an interest in the funds held by the school city; that the surety company did not complete the contract, since it contracted to pay all debts; that therefore the school city had the right to withhold not only enough to pay those claimants whose liens had been perfected, but an additional sum sufficient to pay all unpaid bills.

This contention overlooks the fact that the appellant had a claim, for which he was entitled to a lien, amounting to more than the total amount remaining due on the contract; that, if settlement had not been made with him, he might have filed the claim, and his claim, and the claims of those others who had procured liens, would have amounted to more than the total amount withheld and still due under the contract, and the appellant and those others who had filed claims and procured liens would have been entitled to the whole amount, to the

exclusion of those who had not procured liens, and to the exclusion of the surety company.

But if the balance had been paid to the surety company, rather than to the appellant who was entitled to a lien, still the school city would have no interest in this controversy. The statute only requires that the school city withhold sufficient to pay the claims of those who have procured liens. The school city has no right of action to recover back from a contractor in order to pay obligations that are not protected by liens. The right to an action on the bond to pay such claims is in the claimant, and not the school city, and the claimants may not maintain an action against the school city to recover the amount of their claims unless they filed their claims and procured liens. Having withheld enough of the funds to pay all liens that were filed, and having paid out the balance, the school city is not liable to the claimants, and no claimant is asserting that the school city is liable, and it is difficult to see how the school city has any interest whatever in this controversy.

It is also asserted in this petition for rehearing that this court erred in holding that there was a mistake of fact in the agreement between the appellant and the school city. It is clear, however, from the recitals in the resolutions and records of the school city that its intention was to pay MacDonald all of the balance of the funds in its hands except sufficient to pay the claims which had matured into liens, and it is clear that this is what the appellant agreed to. The mistake was in assuming that there were liens amounting to the full $20,000 withheld. The school city had no right to withhold more than enough to pay the liens, and the appellant was entitled to a lien, and to receive all of the balance due over and above the amount necessary to pay the liens. In fact, had the settlement not been made, and had the appellant perfected his lien, the total liens would have exceeded

the total amount due, including the $20,000 item, and those parties to this action who had perfected liens would not have been paid in full as they are now being paid.

The Symons Clamp and Manufacturing Company furnished forms which were used by the original contractor. When the appellant took over the work he continued to use the forms, which remained on the premises. At the time of the settlement between the appellant and the school board, the Symons Clamp and Manufacturing Company had a claim on file. After the settlement, the appellant paid for the use of the forms during the time he used them as a sub-contractor.

The Symons Clamp and Manufacturing Company is now contending that the court erred in holding that it did not have a valid lien.

The appellant contends that the Symons Clamp and Manufacturing Company is not entitled to a lien, since the rental of forms is not within the statute, and that if the claim is within the statute it is divisible and must be treated as two claims, one against the appellant and one against the original contractor, and that that part of the claim which is now unpaid was against the original contractor and was not filed within sixty days after the service was rendered.

The latter contention is entirely inconsistent with the contentions of the appellant concerning the principal issue involved, and with the views expressed in the principal opinion. But there is another reason why appellants contentions cannot now prevail. The claim of the Symons Clamp and Manufacturing Company was on file, in proper form, at the time of the agreement between the appellant and the school city that sufficient funds should be withheld to pay the claims on file, and that the appellant should forego any claim against so much of the funds on hand as were necessary for that

purpose. The appellant might at that time have contended that the claims on file were invalid, but he did not do so, but chose to agree to forego his claim against so much of the funds as were necessary to pay those claims. It must be concluded that he is bound by that agreement and cannot question the validity of the claim at this time.

The Symons Clamp and Manufacturing Company is entitled to preference and to have its claim paid out of the funds prior to the payment of the appellant, and the original opinion is modified to that extent, and otherwise the petitions for rehearing are denied.