37 So.2d 504
### CLEMONS et al. v. HUCKABY et al.
#### 8 Div. 416.

Supreme Court of Alabama.
Oct. 7, 1948.

Rehearing Denied Dec. 2, 1948.

P. W. Shumate and W. C. Rayburn, both of Guntersville, for appellants.

Scruggs & Grass, of Guntersville, for appellees.

STAKELY, Justice.

E. L. Clemons and Estelle Clemons filed a bill in equity against C. L. Huckaby, Dr. W. R. Huckaby and the Citizens Bank of Guntersville to enjoin the foreclosure of a mortgage on certain real estate located in Marshall County. The mortgage was executed by E. L. Clemons and Estelle Clemons to C. L. Huckaby to secure an indebtedness of $300 as evidenced by a negotiable promissory note payable to C. L. Huckaby. The Bank of Guntersville through its answer set up that it was an innocent purchaser for value before maturity of the note secured by the mortgage. The court entered a final decree denying relief to the complainants and upholding the right of the Bank of Guntersville to proceed with foreclosure of the mortgage. This appeal is from that decree.

Without dispute the evidence shows that the Bank of Guntersville was a purchaser of the note, with its mortgage security, for value before maturity without any actual notice of defects or defenses. The note was endorsed by C. L. Huckaby and Dr. W. R. Huckaby. Complainants contend that the note and mortgage grow out of a transaction expressly declared void by statute and that this defense may be made against a holder in due course. The Bank of Guntersville not conceding such principle, insists that under the facts in the case such principle, if existing, is not applicable. The evidence may be further summarized as follows.

One Barnett, who is not a party to this suit, made a contract with the United States Post Office Department to carry the United States Mail on a route from Birmingham, Alabama, to Tuscaloosa, Alabama. Dr. W. R. Huckaby, one of the appellees, was surety on his bond. Barnett defaulted under the contract and Dr. W. R. Huckaby took over the contract in order to comply with the requirements of the bond. Dr. W. R. Huckaby got others to carry the mail for him, including his son C. L. Huckaby and Joe Sisky. For this service he paid them the exact amount he received from the U. S. Post Office Department, which was $5.52 per day. E. L. Clemons made a trade with C. L. Huckaby, whereby E. L. Clemons would pay C. L. Huckaby $300 if C. L. Huckaby would arrange with his father for E. L. Clemons to carry the mail. Thereupon Dr. W. R. Huckaby made an oral contract with E. L. Clemons to carry the mail, Clemons to have the additional right to carry passengers and other parcels on the truck carrying the mail. Clemons was to furnish the truck, as had others who had contracted with Dr. W. R. Huckaby, and Clemons was to receive from Dr. W. R. Huckaby the amounts which he would receive from the United States Post Office Department. E. L. Clemons gave C. L. Huckaby his note and mortgage for $300 and began carrying the mail and Dr. W. R. Huckaby turned over to him the checks which he received from the Post Office Department until E. L. Clemons was stopped by the Postmaster at Birmingham. Thereafter Dr. W. R. Huckaby got others to carry the mail for him.

The evidence is in dispute on one phase of the agreement between E. L. Clemons and Dr. W. R. Huckaby. According to E. L. Clemons the note and mortgage was given as a consideration for the transfer and assignment to him by Dr. W. R. Huckaby of the contract to carry the mail, with the additional right to carry passengers. According to E. L. Clemons, Dr. W. R. Huckaby further agreed when the mortgage fell due, that "I could pay him and by that time he would have the contract transferred to me." According to Dr. W. R. Huckaby and C. L. Huckaby the agree-ment between Dr. W. R. Huckaby and Clemons was that Clemons was to carry the mail for Dr. W. R. Huckaby, with the right to carry passengers and parcels. According to C. L. Huckaby this was the agreement which he was paid for procuring for Clemons from his father.

In determining the rights of the parties certain statutes designed to protect the United States Government from profiteering on mail contracts should be considered. We set out §§ 444 and 445, Title 39 U.S.C.A. as follows:

"444. No contractor for transporting the mail within or between the United States and any foreign country shall assign or transfer his contract, and all such assignments or transfers shall be null and void."

"445. No subletting or transfer of any mail contracts shall be permitted without the consent in writing of the Postmaster General; and whenever it shall come to the knowledge of the Postmaster General that any contractor has sublet or transferred his contract, except with the consent of the Postmaster General as aforesaid, the same shall be considered as violated and the service may be again advertised as provided by law; and the contractor and his securities shall be liable on their bond to the United States for any damage, resulting to the United States in the premises."

When Barnett defaulted in the performance of his contract to carry the mail, Dr. W. R. Huckaby, as surety on his bond, could follow either of two courses. He could take no action and so allow the United States Post Office Department to advertise for new bids and let the contract to a new contractor and pay such damages, if any, as the government might sustain or he could take over performance of the contract. It is claimed that in this latter event the foregoing statutes would not apply because they are directed at the contractor and not the surety on the contractor's bond. This does not appear to us to be a sound position. When the surety takes over the contract he stands for all practical purposes in the shoes of the contractor and we think becomes the contractor within the meaning of the statutes. MacDonald v. Calumet Supply Co., 215 Ind.

536, 19 N.E.2d 567, 21 N.E.2d 400, 122 A.L.R. 502, 509.

 But there is no doubt that when Dr. W. R. Huckaby took over the contract of Barnett, he could get someone else to do the work for him according to the terms of the contract without violation of the statute. Moon v. Potter, 115 Ga. 673, 42 S.E. 43; 41 Am.Jur. p. 754. Accordingly if the version of the Huckabys as to the note and mortgage be accepted, there is no illegality in the transaction. Furthermore if the agreement constituted a subletting of the contract rather than a transfer or assignment, then the agreement between E. L. Clemons and Dr. W. R. Huckaby was voidable at the option of the Postmaster General rather than void. Myers et al. v. Pickett et al., 81 Tex. 53, 16 S.W. 643. As will be pointed out this would make a difference in the rights of the parties.

In McCormick v. Fallier, 223 Ala. 80, 134 So. 471, 474, this court in effect said that there is a defense which is as available against a bona fide holder for value as against any other party, that is when the instrument is void, not merely voidable, "by reason of some positive interdiction of law". In that case the court was dealing with the statute relating to usurious interest. It is interesting to note that subsequently the legislature passed a statute providing in effect that the defense of usury may not be pleaded against a holder in due course. Acts of 1931, p. 783, § 65, Tit. 9, Code of 1940.

Appellants insist that the principle set forth in McCormick v. Fallier, supra, is the principle that controls in this case. Accordingly it is contended that under the version of the transaction as given by E. L. Clemons the agreement between E. L. Clemons and Dr. W. R. Huckaby was void and such defense is available against the Bank of Guntersville under the foregoing federal statutes even if the Bank of Guntersville otherwise was a holder in due course.

We have considered the case with great care and see no reason for disturbing the ruling of the trial court, which the court adhered to on a motion for rehearing. The burden of proof rested on E. L. Clemons to show that the transaction was according to his version and it may be added that until there is proof to the contrary there is a presumption in favor of legality and of intent to comply with the law. Walls v. Decatur Fertilizer Co., 215 Ala. 426, 111 So. 214; 31 C.J.S., Evidence, § 134, page 769. We find it unnecessary to consider the principle enunciated in McCormick v. Fallier, supra. According to the version of the Huckabys the agreement of Dr. Huckaby with E. L. Clemons was valid and we think that the right of the Bank of Guntersville to foreclosure should be upheld.

Affirmed.

BROWN, FOSTER and LAWSON, JJ., concur.