Present: All the Justices

INTERNATIONAL FIDELITY INSURANCE COMPANY

v.   Record No. 942210

OPINION BY JUSTICE LAWRENCE L. KOONTZ, JR.
November 3, 1995

ASHLAND LUMBER COMPANY, INC.

FROM THE CIRCUIT COURT OF HANOVER COUNTY
Richard H.C. Taylor, Judge

In this appeal, we consider whether a judgment creditor may obtain a lien by writ of fieri facias on, and thus reach by garnishment, funds retained by a principal relating to a contract upon which the judgment debtor has defaulted, where the judgment debtor's surety has assumed the duties and responsibilities of its indemnitee.

On October 16 and 22, 1992, appellant International Fidelity Insurance Company (IFIC) issued payment bonds on behalf of Nu-Way Builders of Virginia, Inc. (Nu-Way) to secure the cost of labor and materials on two contracts Nu-Way had been awarded from the Virginia Department of Transportation (VDOT). The bonds were issued pursuant to an agreement of indemnity between Nu-Way and IFIC. The agreement included a provision that if Nu-Way breached an indemnified contract, Nu-Way would assign to IFIC, inter alia, "[a]ny and all percentages retained and any and all sums that may be due or [t]hereafter become due on account of any and all contracts referred to in the Bonds" issued pursuant to the agreement.

Without indicating specific dates, the record establishes that Nu-Way began work under the two contracts, purchasing materials and letting sub-contracts for some portion of the work.

Prior to August, 1993, VDOT terminated both contracts because Nu-Way failed to pay certain subcontractors and suppliers. At that time, VDOT retained $34,123.47 of the contract funds. Thereafter, IFIC made payments to Nu-Way's suppliers and subcontractors in at least partial satisfaction of its bonds.

Appellee Ashland Lumber Company, Inc. (Ashland) was a material supplier on open account to Nu-Way. On August 27, 1993, Ashland filed a motion for judgment against Nu-Way and its president, C. Earl Vipperman, Jr., alleging Nu-Way's failure to pay on demand its account for materials received in the amount of $15,071.36. Ashland obtained a judgment for the full amount of the account plus interest, costs, and attorney's fees on February 4, 1994.

On August 26, 1994, Ashland filed with the clerk of the trial court a suggestion for summons in garnishment to satisfy the February 1994 judgment. The civil process related to the suggestion for summons in garnishment, including a writ of fieri facias, was delivered to the sheriff on August 29, 1994. On August 31, 1994, the sheriff served VDOT with the writ of fieri facias and an appurtenant garnishment summons in the amount of $21,969.50.

Upon being served with the writ and summons, VDOT lodged with the trial court funds sufficient to satisfy the garnishment, noting in an accompanying letter that "[w]hile VDOT has tendered [the funds] to the Court pursuant to the garnishment summons, VDOT is not certain that the garnishment summons properly attached to the funds." VDOT also provided IFIC with a copy of

the writ and summons.

On September 16, 1994, IFIC, pursuant to Rule 2:15, filed a petition to intervene in the garnishment proceeding. Following an *ore tenus* hearing on September 20, 1994, the chancellor directed that the parties file memoranda in support of their respective positions. In its memorandum, IFIC asserted that its equitable right of subrogation as a surety related back to the dates of the original surety bonds and, thus, took precedence over a subsequent creditor. In the alternative, IFIC asserted that its contractual right of assignment became effective prior to Ashland's judgment and thus precluded garnishment of the funds assigned to IFIC. Ashland asserted that IFIC failed to perfect its right to the funds by recording the indemnity agreement or otherwise obtaining a secured interest in the funds, thus subordinating its claim to Ashland's judgment.

Upon consideration of the memoranda and oral argument, the chancellor issued a letter opinion in which he stated:

> [a]pplying the particular facts in this case to the garnishment statute, it is the opinion of this Court that [Nu-Way] "is or may be entitled" to the funds [held by VDOT] and under none of the theories of [IFIC] does it have priority over [Ashland].

In his final order, the chancellor, while permitting the intervention of IFIC, ordered that the funds lodged with the court be paid over to Ashland in satisfaction of its judgment against Nu-Way. We awarded IFIC's appeal assigning error to the chancellor's determination that IFIC's subrogation and assignment rights did not preclude the garnishment.

We need only address IFIC's rights of equitable subrogation,

which we find dispositive of this appeal. A garnishment of funds or other intangible property cannot proceed without a valid lien on that property by writ of fieri facias. See Code § 8.01-512.3 (designating form of garnishment summons to require garnishee to answer "by reason of the lien of fieri facias"); see also Virginia Nat'l Bank v. Blofeld, 234 Va. 395, 400, 362 S.E.2d 692, 695 (1987)(construing Code §§ 8.01-511 and -512.3 "against the background of [Code § 8.01-501]"). The writ of fieri facias creates a lien in favor of the judgment creditor only to the extent that the judgment debtor has a possessory interest in the intangible property subject to the writ. Lynch v. Johnson, 196 Va. 516, 521, 84 S.E.2d 419, 422 (1954). Accordingly, when the judgment debtor has no interest in the property held by the suggested garnishee, the writ does not create a valid lien on that property, and the suggestion for summons in garnishment must fail.

> Code § 8.01-501 provides, in pertinent part, that [e]very writ of fieri facias shall . . . be a lien from the time it is delivered to a sheriff or other officer to be executed, on all the personal estate of or to which the judgment debtor is, or may afterwards and on or before the return day of such writ become, possessed or entitled, in which, from its nature is not capable of being levied on . . . .

Thus, the threshold question presented to the chancellor in this case was whether, on August 29, 1994, when Ashland had the writ of fieri facias delivered to the appropriate sheriff, Nu-Way had or would have any possessory interest in funds held by VDOT before or on the return date of the summons in garnishment. We hold that it did not.

By virtue of its default on the two contracts with VDOT, Nu-Way was terminated from these contracts and any right it had to receive further funds from VDOT was extinguished at that time. IFIC, as Nu-Way's surety, then became responsible for the debts of its defaulted indemnitee, and upon payment of the subcontractors and materialmen, would be entitled, by equitable subrogation, to any receivables due on the contracts. IFIC correctly asserts that its rights relate back to the dates of the surety contracts, in this instance October 16 and 22, 1992, the dates the bonds were issued. Dickenson v. Charles, 173 Va. 393, 402-03, 4 S.E.2d 351, 354-55 (1939). Although IFIC would not have a present right to receive the funds until it satisfied all the requirements of its bonds, this limitation on its rights does not permit the defaulted indemnitee, Nu-Way, or its judgment creditor, Ashland, to assert a continuing right to the funds.

In short, on August 29, 1994 when Ashland attempted to establish a lien on the funds retained by VDOT, Nu-Way had no possessory interest in the funds. Accordingly, no lien was established and no garnishment of the funds could result.

Ashland's reliance on Electric Transmission Company v. Pennington Gap Bank, Inc., 137 Va. 94, 119 S.E. 99 (1923), is misplaced. That case dealt with a mechanic's lien and a creditor's lien secured by a deed of trust which "had already attached, or could be asserted, when the surety assumed the completion of the contract." Id. at 105, 119 S.E. at 103. Here, the lien could not have been asserted until Ashland obtained its judgment against Nu-Way, several months after IFIC assumed

responsibility for the debts on the contracts.[1]

Having determined that the chancellor erred in awarding a garnishment in favor of the judgment creditor, there remains the question of the disposition of those funds lodged with the court by the suggested garnishee. Assuming, without deciding, that IFIC's petition for intervention permits it to assert a claim to receive the funds, compare Rule 2:15 (procedure for intervening in equitable suits) with Code § 8.01-365 (procedure for filing third party claim to funds subject to writ of fieri facias), we hold that the record before us does not establish affirmatively that at the time of the chancellor's final ruling IFIC had fully discharged its duties under the two bonds, thus entitling it to the retained funds. Although it was alleged in oral argument that those duties have subsequently been discharged and VDOT has paid the remaining funds it retained to IFIC, we are concerned here only with the facts that were available to the trial court.
Those facts do not establish the respective rights between IFIC and VDOT, the suggested garnishee[2], to the funds lodged with the

---

[1]Ashland has asserted that its judgment against Nu-Way should be afforded the same dignity as a mechanic's lien. However, the record of this case establishes only that Ashland had "an open account from numerous jobs and invoices," and not that it was a supplier on the specific contracts related to the funds retained by VDOT. We express no opinion on whether a different result would have been reached if Ashland's judgment had been obtained in lieu of a mechanic's lien on supplies for the contracts.

[2]Nonetheless, VDOT was not an indispensable party to this appeal, as suggested by Ashland in its motion to dismiss. We distinguish the present appeal from Butler v. Butler, 219 Va. 164, 247 S.E.2d 353 (1978), wherein we held that the suggested garnishee was indispensable to the appeal of a garnishment proceeding. Unlike Butler, this appeal was brought by an intervening third party. By intervening, IFIC placed itself in

court.

For these reasons, we will reverse the chancellor's order directing that the funds be paid to the judgment creditor and remand with directions that further proceedings be held consistent with this opinion.

<u>Reversed and remanded</u>.

---

opposition only to the judgment creditor, thus only the judgment creditor was an indispensable party to the intervenor's appeal of the chancellor's unfavorable ruling.